RONALD J. TENPAS
Acting Assistant Attorney General
Environment and Natural
Resources Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

DANIEL G. KNAUSS
United States Attorney
District of Arizona

SUE A. KLEIN
Assistant U.S. Attorney
Arizona State Bar No. 11253
Two Renaissance Square
40 N. Central Avenue, Ste. 1200
Phoenix, Arizona 85004-4408
Telephone: (602) 514-7500
E-mail: sue.klein@usdoj.gov

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br>v.<br>Richmond American Homes of Arizona, Inc.,<br><br>    Defendant. | No. 2:07-cv-1796-HRH<br><br>**CONSENT DECREE** |

WHEREAS Plaintiff, the United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a Complaint initiating this action against Richmond American Homes of Arizona, Inc. ("Richmond" or "Defendant") in the United States District Court for the District of Arizona requesting civil penalties and injunctive relief;

WHEREAS Plaintiff, the United States of America, alleges that Richmond violated the Clean Air Act (the "Act"), 42 U.S.C. §§ 7401 *et seq.*, and the federally enforceable Arizona State Implementation Plan ("SIP"), including Section 310 of the Maricopa County Air Quality Department ("MCAQD" or the "Department") Regulations, by failing to implement work practices required to abate fugitive dust emissions on ten (10) separate occasions;

WHEREAS EPA issued Finding and Notice of Violation ("NOV") with respect to these allegations on January 19 and May 17, 2005;

WHEREAS Richmond disputes the violations alleged in the NOVs and the Complaint;

WHEREAS this Consent Decree does not constitute an admission of liability by Richmond; and

WHEREAS the parties have agreed that settlement of the civil judicial claims as alleged in the Complaint is in the public interest and that entry of this Consent Decree without further litigation is the most appropriate way to resolve this action,

THEREFORE IT IS ORDERED, ADJUDGED, AND DECREED as follows:

## I. JURISDICTION AND PARTIES BOUND

1. This Court has jurisdiction over the subject matter of this action and over the parties pursuant to section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1331, 1345 and 1355. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c) and § 1395(a), and § 113(b) of the Act, 42 U.S.C. § 7413(b), because the violations that are the subject of the Complaint in this action took place in Maricopa County, Arizona, and because the Defendant is doing business in this District. The Complaint states a claim upon which relief may be granted against Richmond pursuant to 42 U.S.C. § 7413(b). A notice of commencement of this action has been given to the State of Arizona through the Department in accordance with section 113(b) of the Act, 42 U.S.C. § 7413(b). Defendant shall not challenge entry of this Consent Decree or this Court's jurisdiction to enter, enforce, modify or terminate this Consent Decree.

2. This Consent Decree shall apply to and be binding upon Defendant, its successors and assigns. It shall also apply to and be binding upon the United States on behalf of the EPA.

3. If Defendant merges with or is acquired by a third party, Defendant shall attach a copy of this Consent Decree to any merger or acquisition agreement and shall make performance of the obligations of Defendant under this Consent Decree an obligation of the new entity, in the case of a merger, or the purchaser, in the case of an acquisition. Any such merger or acquisition will not relieve Defendant from the obligations of this Consent Decree. Nothing herein shall preclude Defendant from allowing its successors in interest to perform

2

Defendant's obligations under this Consent Decree. However, Defendant is ultimately responsible for full compliance with the terms of this Consent Decree.

## II. CIVIL PENALTY

4. After entry of this Consent Decree and within ten (10) days of the receipt of the electronic funds transfer procedures described in paragraph 5, Richmond shall pay a civil penalty of ONE HUNDRED FIFTY-FIVE THOUSAND DOLLARS ($155,000) to the United States.

5. Payments under this Consent Decree shall be made by electronic funds transfer to the United States Treasury according to current United States electronic funds transfer ("EFT") procedures. The United States shall provide a copy of current EFT procedures to Defendant pursuant to section IX (Notification) of this Consent Decree. Concurrently with the EFT, Defendant shall fax notice of payment to the person designated as "point of contact" on the EFT instructions and shall send notice of payment to EPA and the United States Attorney's Office at the addresses listed in section IX (Notification). The notice of payment shall identify:

    i.    the date and amount of money transferred;

    ii.    the name and address of the transferring bank;

    iii.    this case by name;

    iv.    the civil action number;

    v.    the United States Attorney's Office file number, 2005V00496, and DOJ File No. 90-5-2-1-08574;

    vi.    this Consent Decree (including date of entry); and

    vii.    a description of the reason for the payment, including the paragraph number of this Consent Decree that is most relevant to the payment.

## III. DEFINITIONS

6. Definitions for terms used in this Consent Decree are as follows:

(a) "Effective date." The "effective date" of this Consent Decree is the date of entry of the Consent Decree by the Clerk of the United States District Court for the District of Arizona.

(b) For purposes of this Consent Decree, "bulk materials" means any material, including but not limited to, earth, rock, silt, sediment, sand, gravel, soil, fill, aggregate less than 2 inches in length or diameter (i.e., aggregate base course (ABC)), dirt, mud, demolition debris, cotton, trash, cinders, pumice, saw dust, feeds, grains, fertilizers, and dry concrete, which are capable of producing fugitive dust.

(c) For purposes of this Consent Decree, "carry-out/trackout" means any and all bulk materials that adhere to and agglomerate on the exterior surfaces of motor vehicles, haul trucks, and/or equipment (including tires) and that have fallen onto a paved area accessible to the public.

(d) For purposes of this Consent Decree, "disturbed surface area" means a portion of the earth's surface (or material placed thereupon) which has been physically moved, uncovered, destabilized, or otherwise modified from its undisturbed native condition, thereby increasing the potential for the emission of fugitive dust. An area is considered to be a disturbed surface area until the activity that caused the disturbance has been completed and the disturbed surface area meets the stabilization standards of Section 302 of Maricopa County Air Quality Department Rule 310.

(e) For purposes of this Consent Decree, "dust generating operation" means any activity capable of generating fugitive dust, including but not limited to, land clearing, earth moving, weed abatement by discing or blading, excavating, construction, demolition, bulk material handling, storage and/or transporting operations, vehicle use and movement, the operation of any outdoor equipment, or unpaved parking lots.

4

(f) For purposes of this Consent Decree, "earthmoving operation" means the use of any equipment for an activity which may generate fugitive dust, such as but not limited to, cutting and filling, grading, leveling, excavating, trenching, loading or unloading of bulk materials, demolishing, blasting, drilling, adding to or removing bulk materials from open storage piles, back filling, soil mulching, landfill operations, or weed abatement by discing or blading.

(g) For purposes of this Consent Decree, "fugitive dust" means the particulate matter, which is not collected by a capture system, which is entrained in the ambient air, and which is caused from human and/or natural activities, such as but not limited to, movement of soil, vehicles, equipment, blasting, and wind. Fugitive dust does not include particulate matter emitted directly from the exhaust of motor vehicles and other internal combustion engines, from portable brazing, soldering, or welding equipment, and from piledrivers, and does not include emissions from process and combustion sources that are subject to other Maricopa County rules.

(h) For purposes of this Consent Decree, "work site" means any property: (1) located in Maricopa County, Arizona; (2) upon which any dust generating operations and/or earthmoving operations occur; and (3) for which Richmond American is the earthmoving/dust control permit holder.

## IV. INJUNCTIVE RELIEF

7. In order to abate fugitive dust emissions, Richmond agrees to the following:

   (a) Richmond's Vice Presidents of Land Development, Directors of Land Development, Land Development Project Managers, Vice Presidents of Construction, Vertical Project Managers, Vertical Construction Superintendents, Vertical Construction Assistant Superintendents, Regional Directors of Stormwater Compliance, and Compliance Coordinators whose job responsibilities involve dust generating operation(s) at Richmond's work sites in Maricopa County, Arizona must complete a three-hour dust control course titled, "Dust

5

Control in Maricopa County - Compliance with MCAQD Rule 310," or equivalent training provided or approved by the Department within: (1) three (3) months of the Effective Date of this Consent Decree; or (2) the time the training is offered, whichever is later. In addition, any new employees hired by Richmond after the Effective Date of this Consent Decree who are required to complete the dust control training under this subparagraph must complete the training within: (1) three (3) months of the date of hire; or (2) the time the Department offers the course, whichever is later. All current and new employees of Richmond and/or its subsidiaries who are required to complete the dust control training under this subparagraph, must also complete a refresher dust control course administered by the Department at least once every year after initial training.

(b) In any future contract with subcontractors whose job responsibilities will require them to spend all or a portion of their time at Richmond's work sites in Maricopa County, Arizona, Richmond shall require compliance with MCAQD Rule 310. Richmond shall also inform the said subcontractors of the availability of the three-hour dust control course titled, "Dust Control in Maricopa County - Compliance with MCAQD Rule 310," administered by the Department.

(c) Richmond shall provide to EPA certification that all current and new employees of Richmond have been trained as required under § IV, paragraph 7, subparagraph(a) of this Consent Decree. These certifications shall list the names of all employees trained, and for each such employee, the date each employee was hired and the date each employee received the dust control course or refresher course. These certifications shall be due to the EPA every six (6) months from the Effective Date of this Consent Decree. The last certification will be due eighteen (18) months after the Effective Date of this Consent Decree.

(d) Within: (1) three (3) months of the Effective Date of this Consent Decree; or (2) the time the Department administers the training course required under § IV,

6

paragraph 7, subparagraph (a), whichever is later, at any of its work sites having fifty (50) acres or more of disturbed surface area at any given time, Richmond will have in place a qualified Dust Control Coordinator. A Dust Control Coordinator shall be considered qualified when he/she has: (i) full authority to ensure dust control measures are implemented onsite, including conducting inspections, filing required reports, deploying dust suppression resources, and modifying or shutting down activities as needed to control dust; and (ii) successfully completed the dust training course or equivalent training provided or approved by the Department that is referenced in § IV, paragraph 7, subparagraph (a). The Dust Control Coordinator shall be responsible for managing dust prevention and dust control on the site. A Dust Control Coordinator shall be present at all times dust generating operations by Richmond or its subcontractors, related to the purposes for which the dust control permit was obtained, occur at work sites having fifty (50) acres or more of disturbed surface area. The requirement for a Dust Control Coordinator shall lapse when the area of disturbed soil becomes less than fifty (50) acres and the previously disturbed areas have been stabilized in accordance with the requirements of MCAQD Rule 310.

All obligations specified in section IV of this Consent Decree shall cease eighteen (18) months after the Effective Date of this Consent Decree.

## V. STIPULATED PENALTIES

8. Except as may be excused under section VII (*Force Majeure*) of this Consent Decree, and for a period of eighteen months (18) months from the Effective Date of this Consent Decree, Richmond shall be liable for stipulated penalties for failure to comply with the requirements of sections II and IV of this Consent Decree as follows:

    (a) For failure to comply with the training requirements of paragraph 7, subparagraph (a) of this Consent Decree, Richmond shall pay a stipulated penalty of One Thousand Dollars ($1,000) per quarter.

(b) For failure to comply with the contract requirements of paragraph 7, subparagraph (b) of this Consent Decree, Richmond shall pay a stipulated penalty of Five Hundred Dollars ($500) per occurrence.

(c) For failure to timely submit a required notice under paragraph 7, subparagraph (c) of this Consent Decree, Richmond shall pay a stipulated penalty of Five Hundred Dollars ($500) per occurrence.

(d) For failure to comply with the requirements of paragraph 7, subparagraph (d) of this Consent Decree, Richmond shall pay a stipulated penalty of One Thousand Dollars ($1,000) per day.

(e) Richmond shall pay a stipulated penalty of One Thousand Dollars ($1,000) per day for failure to timely pay the civil penalty required by paragraph 4 of this Consent Decree.

9. All stipulated penalties shall begin to accrue on the day a violation occurs and shall continue to accrue until the violation ceases. Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree. Any stipulated penalty accruing pursuant to this Section shall be payable on demand and due not later than thirty (30) days from EPA's written demand. Stipulated penalties shall be paid by EFT in the same manner as set forth in paragraph 5. A transmittal letter shall accompany the payment of stipulated penalties to refer to this case by name, civil action number, this Consent Decree (including date of entry), USAO No. 2005V00496, and DOJ File No. 90-5-2-1-08574.

10. If Richmond fails to pay stipulated penalties owed pursuant to this Consent Decree within thirty (30) days of EPA's written demand, it shall pay interest on the late payment for each day of late payment after the initial thirty (30) day time period. The rate of interest shall be the most recent interest rate determined pursuant to 28 U.S.C. § 1961. If Defendant disputes its obligation to pay part or all of the stipulated penalty, it shall initiate the dispute resolution procedure under section VIII (Dispute Resolution) of this Consent Decree. If

8

Defendant invokes dispute resolution, Defendant shall pay the United States any amount that it does not dispute.

11. Payment of stipulated penalties for violation of this Consent Decree is in addition to the United States' right to seek additional monetary penalties or other relief for the violations for which stipulated penalties were imposed. In addition, the United States reserves its right to pursue any or all relief for any or all violations outside the provisions of this Consent Decree.

## VI. RIGHT OF ENTRY

12. EPA and its contractors, consultants and agents shall have authority to enter any Richmond work site at all reasonable times upon proper presentation of correct credentials. This provision in no way limits or otherwise affects any right of entry held by the EPA pursuant to applicable federal, state or local laws, regulations and permits.

## VII. *FORCE MAJEURE*

13. Defendant's performance of the obligations in paragraph 7, subparagraphs (a) through (d) of this Consent Decree may be excused or delayed to the extent, and for the period of time, that such performance is prevented or delayed by events that constitute a *force majeure*.

14. For purposes of this Consent Decree, a *force majeure* is defined as any event arising from causes beyond the control of Defendant, including its subcontractors, and that cannot be overcome by Defendant's diligent and timely efforts. Economic hardship, normal inclement weather, and increased costs of performance shall not be considered events beyond the reasonable control of Defendant for purposes of determining whether an event is a *force majeure*.

15. In the event of a *force majeure*, the time for performance of the activity delayed by the *force majeure* shall be extended for the time period of the delay attributable to the *force majeure*. The time for performance of any activity dependent on the delayed activity may be similarly extended, except to the extent that the dependent activity can be implemented in a shorter time. EPA shall determine whether dependent activities will be delayed by the

*force majeure* and whether the time period should be extended for performance of such activities. Defendant shall adopt all reasonable measures to avoid or minimize any delay caused by a *force majeure*.

16. When an event occurs or has occurred that may delay or prevent the performance of any obligation of this Consent Decree, Defendant shall notify by telephone (415-947-4106) the Chief, Air Enforcement Office, Air Division of the EPA, Region IX, within seventy-two (72) hours of such event. Telephone notification shall be followed by written notification, made within seven (7) days of such event. The written notification shall fully describe:
    (a) the event that may delay or prevent performance;
    (b) reasons for the delay, and the reasons the delay is beyond the reasonable control of the Defendant;
    (c) the anticipated duration of the delay;
    (d) actions taken or to be taken to prevent or minimize a delay;
    (e) a schedule for implementation of any measures to be taken to mitigate the effect of the delay;
    (f) any dependent activities and the time needed to implement any dependent activities; and
    (g) whether Defendant claims the event to be a *force majeure*.

17. Defendant's failure to comply with the notice requirements provided under this Section for any delay in performance will be deemed an automatic forfeiture of its right to assert that the delay was caused by a *force majeure* unless such failure to provide notice was caused by a *force majeure*.

18. Within seven (7) days after receiving notice from Defendant pursuant to section IX, EPA shall provide written notification to Defendant stating whether Defendant's request for a delay is justified, and whether EPA agrees that such delay was caused by a *force majeure*. EPA's failure to respond to a request for delay shall be deemed a denial of that request. If

Defendant disagrees with EPA's determination, it may initiate dispute resolution procedures pursuant to section VIII (Dispute Resolution) of this Consent Decree.

### VIII. DISPUTE RESOLUTION

19. If Defendant disputes any determination made by EPA under this Consent Decree related to (1) a request by EPA for stipulated penalties, (2) EPA's determination related to *force majeure*, or (3) the termination of the Consent Decree under paragraph 33, it shall send a written notice to EPA and the Department of Justice outlining the nature of the dispute and requesting informal negotiations to resolve the dispute. Such period of informal negotiations shall not extend beyond fifteen (15) working days from the date when the notice was sent unless the parties agree otherwise.

20. If the informal negotiations are unsuccessful, the determination of EPA shall control, unless Defendant files a motion with this Court for dispute resolution. Any such motion must be filed within thirty (30) days after receipt by Defendant of a notice in writing from EPA terminating informal negotiations and must be concurrently sent to DOJ and EPA. The United States shall then have thirty (30) days to respond to Defendant's motion. In any such dispute resolution proceeding, Defendant bears the burden of proving, by preponderance of the evidence, that (a) in disputes regarding section VII (*Force Majeure*), the delay was caused by circumstances beyond the reasonable control of Defendant, its contractors, and agents, all reasonable measures were taken to avoid or minimize delay, and the duration of the delay was reasonable under the circumstances; and (b) in disputes regarding termination of the Consent Decree under paragraph 33, Defendant has satisfied all of its obligations under this Consent Decree. In disputes regarding EPA's request for stipulated penalties under section V, EPA shall bear the burden of proving, by preponderance of the evidence, that Defendant violated the terms and conditions of the Consent Decree.

21. A timely motion by Defendant will not toll the accrual of stipulated penalties under this Consent Decree, but payment shall be stayed pending resolution of the dispute.

11

## IX. NOTIFICATION

22. Except as otherwise specifically stated, all notices and submissions from Defendant to EPA required by this Consent Decree shall be sent by certified mail, express mail, or similar overnight mail delivery service with return receipt requested, or delivered in person, not later than the day that such notification or submission is required by this Consent Decree, and addressed to:

>     Director, Air Division (AIR-1)
>     U.S. Environmental Protection Agency, Region IX
>     75 Hawthorne Street
>     San Francisco, CA 94105
>     Attn: John Brock, AIR-5

If the due date for a notice or report falls on a weekend day or federal or State of Arizona holiday, the notice or report shall be due on the next working day. All notices and reports submitted to EPA or DOJ shall refer to this Consent Decree and the date of entry of the Consent Decree, and shall cite the case name, the case number, USAO No. 2005V00496, and DOJ File No. 90-5-2-1-08574.

23. All submissions to EPA required by this Consent Decree shall be signed and affirmed by a responsible official of the Defendant using the following certification statement:

>     I certify under penalty of law that I have examined and am familiar with the information submitted in this document and all attachments and that, based on inquiry of those individuals immediately responsible for obtaining the information, I certify that the information is true, accurate, and complete to the best of my knowledge, information, and belief. I am aware that there are significant penalties for submitting false information, including the possibility of fines and imprisonment.

24. Notice as required by this Consent Decree shall be submitted to:

    U.S. Department of Justice:

>     Chief, Civil Division
>     U.S. Attorney's Office
>     Two Renaissance Square
>     40 N. Central Avenue, Suite 1200
>     Phoenix, Arizona 85004-4408

12

Richmond American Homes of Arizona, Inc.:

Todd Demarets
President, Phoenix West Division
Richmond American Homes of Arizona, Inc.
3200 E. Camelback Road, Suite 300
Phoenix, AZ 85018

Richard W. Tobin II, Esq.
Lewis & Roca, LLP
40 North Central Avenue, Suite 1900
Phoenix, AZ 85004-4429

## X. MISCELLANEOUS

25. Entry of this Consent Decree and compliance with the requirements herein shall be in full settlement and satisfaction of the civil judicial claims of the United States against Defendant as alleged in the Complaint filed in this action and in the NOVs dated January 19 and May 17, 2005. This Consent Decree resolves only those matters specifically alleged in the Complaint filed in this action and in the NOVs dated January 19 and May 17, 2005 through the date of lodging of this Consent Decree.

26. Except as specifically provided herein, the United States does not waive any rights or remedies available to it for violation by Defendant of federal or state laws or regulations. The United States reserves all legal and equitable remedies to enforce the provisions of this Consent Decree. This Consent Decree shall in no way affect the United States' ability to bring future actions for any matters not specifically alleged in the Complaint filed in this action and in the NOVs dated January 19 and May 17, 2005, through the date of lodging of this Consent Decree, and settled by this Consent Decree. Nothing in this Consent Decree is intended to nor shall be construed to operate in any way to resolve any criminal liability of Defendant.

27. This Consent Decree in no way affects Defendant's responsibilities to comply with all federal, state, or local laws and regulations.

28. If Richmond fails to pay on a timely basis the full amount of any penalty or interest, it shall be liable for the United States' enforcement and collection expenses, including, but not limited to, attorney fees and costs incurred by the United States for collection proceedings.

29. The United States shall be deemed a judgment creditor for the purposes of collecting any penalties due under this Consent Decree.

30. Defendant shall not deduct the civil penalty paid under this Section in calculating its federal income tax.

31. Each party shall bear its own costs and attorneys' fees in this action, except as otherwise provided herein.

32. This Consent Decree contains the entire agreement between the parties. This Consent Decree shall not be enlarged, modified, or altered unless such modifications are made in writing and approved by all parties and the Court.

33. This Consent Decree shall terminate according to the procedure provided in this paragraph. After Defendant has complied with the requirements of paragraphs 4 and 7 and section V (Stipulated Penalties) of this Consent Decree, Defendant shall provide EPA notice, stating that Defendant has satisfied all obligations of the Consent Decree and believes the Consent Decree can be terminated. Defendant's notice shall refer to this paragraph 33. Thereafter, EPA will provide Defendant with a written response, either stating EPA's agreement that the Consent Decree may be terminated, or stating EPA's determination that the Consent Decree should not be terminated. If EPA fails to provide written response within sixty (60) days after receiving written notice from Defendant or if EPA determines that the Consent Decree should not be terminated, Defendant may initiate dispute resolution procedures pursuant to section VIII (Dispute Resolution). If EPA determines that the Consent Decree may be terminated, the United States shall file a motion with the Court seeking termination.

34. The Court shall retain jurisdiction to resolve any disputes that arise under this Consent Decree.

35. Defendant agrees and acknowledges that final approval of this Consent Decree by the United States and entry of this Consent Decree is subject to the requirements of 28 C.F.R. § 50.7, which provides for notice of the lodging of this Consent Decree in the Federal Register, opportunity for public comment for at least thirty (30) days, and consideration by the United States of any comments prior to entry of the Consent Decree by the Court. The United States reserves its right to withdraw consent to this Consent Decree based on comments received during the public notice period. Defendant consents to entry of this Consent Decree without further notice to the Court.

## XI. FINAL JUDGMENT

36. Upon entry by this Court, this Consent Decree shall constitute a final judgment for purposes of Fed. R. Civ. P. 54 and 58.

**ORDER**

IT IS SO ORDERED:


/s/ H. Russel Holland

United States District Judge

DATED:   November 29, 2007

```
 1  For the Plaintiff United States of America:

 2                                  RONALD J. TENPAS
                                    Acting Assistant Attorney General
 3                                  Environment & Natural Resources Division

 4  Dated: Sept. 17, 2007           _____
                                    ELLEN M. MAHAN
 5                                  Deputy Section Chief
                                    Environmental Enforcement Section
 6
                                    DANIEL KNAUSS
 7                                  United States Attorney
                                    District of Arizona
 8

 9  Dated: Sept. 17, 2007           _____
10                                  SUE A. KLEIN
                                    Assistant United States Attorney
11                                  District of Arizona

12  Dated: 14 AUG 2007              _____
13                                  WAYNE NASTRI
                                    Regional Administrator
14                                  U.S. Environmental Protection Agency,
                                    Region IX
15                                  San Francisco, CA 94105

16  Dated: Aug. 10, 2007            Nancy J. Marvel for
                                    _____
                                    GRANTA Y. NAKAYAMA
17                                  Assistant Administrator
                                    Office of Enforcement and Compliance
18                                  Assurance
                                    U.S. Environmental Protection Agency,
19                                  Washington, D.C.

20
    OF COUNSEL:                     DAVID H. KIM
21                                  Assistant Regional Counsel
                                    U.S. Environmental Protection Agency,
22                                  Region IX
                                    San Francisco, CA 94105
23

24

25

26

27

28
```

**For Defendant Richmond American Homes of Arizona, Inc.:**

Richmond American Homes of Arizona, Inc.

Dated: 31 July 2007     By _____
Todd Demarets
President,
Phoenix West Division
Richmond American Homes
of Arizona, Inc.
3200 E. Camelback Road,
Suite 300
Phoenix, AZ 85018

Dated: 26 July 2007     By _____
Richard W. Tobin II, Esq.
Lewis & Roca, LLP
40 North Central Avenue,
Suite 1900
Phoenix, AZ 85004-4429